## Parker, Appellant, *v.* Mercer.

Where a mortgage was executed to secure the payment of money due by instalments, and after all the notes had fallen due, a bill was filed to foreclose, the court ordered that the proceeds of the mortgage should be applied to the notes *pro rata*, and refused to direct an application in full payment of the first note, although the first note was secured by an accommodation indorser.

APPEAL from the superior court of chancery.

On the first day of December, 1836, the appellant, William Parker, made three promissory notes, amounting in the aggregate to twenty six thousand seven hundred dollars, payable, one in two years for seven thousand five hundred dollars, and the remaining sum equally divided into two notes, which were payable three years after date, to the appellee, William N. Mercer. The note first due was indorsed by William M. Gwin as an accommodation indorser, and also delivered to the appellee. To secure the payment of these notes, the appellant also mortgaged a certain house and lot in the city of Natchez. In March, 1840, the appellee filed his bill for a foreclosure, all the notes being then due. Parker, in his answer, admitted the allegations of the bill, but stated that Gwin was a mere accommodation indorser, without security, and insisted on having the note which he had indorsed first satisfied, that being the first due. The chancellor, however, decreed that the proceeds of the mortgaged premises should be proportionably applied to the three notes, and from this decree the appeal was taken.

W. Yerger, for appellant.

The law seems to be clear, that the note first due, in a mortgage securing several, is entitled to priority of payment. 1 Randolph R. 466; 1 Bibb 150.

Parker, Appellant, *v.* Mercer.

When the note indorsed by Gwin fell due, if Gwin had paid it, he had a clear right, by subrogation, to all Mercer's rights under the mortgage, and could have filed a bill, as a surety of Parker, to foreclose and sell. 3 Paige's R. 614; 4 Har. & Johns. 522; 5 Har. and Johns. 236; 5 Pet. R. 173; 1 McCord's R. 112; 1 Johns. Ch. R. 413; 4 Johns. Ch. R. 129.

This being a debt due by instalments, it was competent for the mortgagee to have filed a bill for a foreclosure and sale, upon default in the first payment; as he had this right, the surety of the mortgagor had the same right. 1 Bibb R. 150; 8 Porter's R. 284; Raymond's Dig. Ch. Cases, 194, 195.

Eustis, for appellee.

The question is, whether or not the fund to arise from the sale of the mortgaged premises shall be applied to the payment of a particular note mentioned in the mortgage, or *pro rata* to the payment of the whole of the notes. The chancellor is in favor of the latter appropriation, and this opinion is not favorably received by either party in the case.

For the defendant in error we contend that no portion of the mortgage proceeds should go towards satisfaction of the indorsed note, until the other notes not indorsed are paid thereout.

First. This case does not come within the rule applicable to payments by the debtor. The debtor *paying* may elect which of his debts shall be paid. If he do not elect, then the creditor, according to Pothier, and the *civil law*, should apply the payment to extinguish the surety debt. 2 Pothier on Ob. 449.

By the common law, in the latter predicament the same rule has been contended for, but doubted by high authority. Brewer *v.* Knapp, 1 Peck. 337. And the reason assigned by the civil law writers, viz: that it enables the debtor to pay two creditors by the same act, is not all sufficient.

But this is not an application of payment, by debtor or by creditor. It is too late for either party to make an appropriation after the controversy has arisen. United States *v.* Kirkpatrick, 9 Wheat. 720.

None of the parties, then, are entitled to a voice in the matter,

but the court is to appropriate the proceeds according to a true construction of the mortgage, and upon principles of equity.

Second. The mortgage is made by the plaintiff in error to the defendant in error, to secure *him*, not for the purpose of indemnifying his indorser. *Secondarily*, it is for the benefit of the indorser. To have put the indorser upon an equal footing with the defendant in error, he should have been named grantee in the mortgage; without that, he has no *legal* right under the deed of mortgage whatever. He has the mere equitable right to be substituted after he has paid.

The rule of substitution rests on the basis of mere equity and benevolence. Cheeseborough *v.* Millard, 1 J. C. R. 409.

Chancellor Kent calls the interest of the indorser in the mortgage a "secondary interest." Hays *v.* Ward, 4 J. C. R. 129.

At law, then, the mortgage is solely a security for the defendant in error. Will a court of equity make it primarily a security for the indorser? The mortgage expresses an intention to secure the whole debt. Will a court of equity construe it to the defeat of that intent? which will be the effect of giving any portion of the proceeds to the indorsed note, for by that much will the notes not indorsed be left without security, should the fund fall short of the whole debt. Had the first note been paid, would not all the mortgaged property still remain as security to the defendant in error for the payment of the two other notes? Would it matter *by whom paid?*

Third. By the indorsement, the indorser became an additional surety to the defendant in error. Such was his intention, *as appears by the answer.* For what sum? For the full amount of the note indorsed. If, however, the court give to the indorsed note part of the proceeds of the mortgage, it will be enforcing a totally different intention, and declare the indorser to have contracted to become surety not for the full amount indorsed, but for such balance only as shall remain due on the indorsed note after such partial payment of the same from proceeds of the mortgage. If it is true that the plaintiff in error intended to give two kinds of security, indorsement and mortgage, the defendant in error is entitled to the full benefit of both these securities. In the words of Marshall, chief justice, " it being equitable that the whole debt

should be paid, it cannot be inequitable to extinguish those portions of the debt for which the security is most precarious," 6 Cranch, p. 28. By payment, the indorser can relieve both securities to the amount paid. Is there any other mode by which he can destroy, either in part or in the whole? "Relief by the doctrine of substitution is never extended to a surety but upon the assumption that the creditor's debt has been, or is to be fully paid." Union Bank of Maryland *v.* Edwards, 1 Gill & Johns. 346.

Fourth. The decision of the chancellor should be reversed, but not for the purpose sought by the plaintiff in error; on the contrary, the notes not indorsed should be first paid; and if this view be correct, upon what ground is the indorser entitled to have been made a party? Had there been a separate mortgage from him he would be entitled to protect his mortgaged estate. 3 Powell on Mort. 972; 991, note. But there is none; nor is there any account in which he is entitled to share. Besides, the only point he could have raised, appears in the record, and the court can see no harm resulting to him from his absence from the record, which must be shown to bring him within the rule of reversing in favor of one not a party to the record.

Mr. Chief Justice Sharkey delivered the opinion of the court.

It is contended by the appellant's counsel, that the chancellor adopted a wrong rule; that the note first due should have been first paid, and that if Gwin had paid the money he would have been entitled to be substituted to all the rights of Mercer. In support of the position taken, we are referred to a case reported in 1 Randolph, 466. A deed of trust was made to secure the payment of three promissory notes. The first note was paid; the second was assigned to one person, and the third to another, the last assignee taking also an assignment of the trust deed. He filed his bill to have the trust fund applied to his debt, inasmuch as he had taken the assignment of the deed. This the court refused to do but held that the deed of trust was equally a security to the first assignee, and ordered that his debt should be first satisfied according to the order fixed in the deed. This authority does not bear the counsel out. It is to be presumed from the language of the court, that the deed itself expressed the order of payment, and it

does not appear whether the last note was due or not, and this, in addition to the structure of the deed, might materially affect the rights of parties. The case settles no principle, except that the transfer of the note first due, operated as a transfer of the security.

We are also referred to a case reported in 1 Bibb, 149. From this we only learn that where instalments are secured by mortgage, the mortgagee may proceed to foreclose for the first instalment before the others become due; and that if the others become due before the decree, they may all be included. It is not decided which note should be first paid. The same points were decided in the case referred to in 8 Porter. None of these decisions afford a precedent in point, and we must therefore settle the case without their aid.

The indorsement of Gwin was evidently intended to secure to Mercer the amount of the note first to fall due, and the mortgage was intended as an additional security for that sum, as well as a security for the balance. Now suppose the mortgaged premises should not produce enough to pay the whole amount, and that Gwin has a right to have the note indorsed by him first paid, then it would follow that the object of the security would be defeated. Mercer's security would be greatly diminished, and Gwin, although he contracted to run the risk of payment, has run no risk at all.— The mortgage, instead of being a security to Mercer, would be converted into a security for Gwin. This would be a perversion of the manifest intention of the contracting parties. Why would Mercer have required personal security, if that security had a right to extricate himself by coercing the appropriation of the mortgaged fund to the note which he had indorsed? It was either an act of folly to require such security, or it was not intended that such an appropriation should be made. The fairest inference is, that the indorsement of Gwin was considered as additional security. Mercer's was the primary interest, Gwin's was but secondary; but if he is to have the mortgaged property applied for his benefit, although it may prejudice Mercer, his would become the primary interest. Such an interpretation of the contract cannot be maintained, nor can it have any such effect consistently with the principles of equity. With greater propriety might we go the full length required by the counsel for the appellee, and apply the

funds arising from the sale of the mortgaged premises, first to the extinguishment of the notes which are without indorsement.—This, however, we do not feel at liberty to do.  Gwin was but an accommodation indorser without consideration, and if there is to be a loss, equity will exempt him from the whole burthen.  A mortgage taken by a creditor, it is said, must be held in trust as well for the secondary interest of the surety, as for the more direct interest of the creditor.  4 J. C. Rep. 129.  If then it be intended as an indemnity as well for the surety as the principal creditor, it must operate equally.  When a loss is to fall upon them, it must fall in proportion to the amount at risk.  On this principle Gwin receives the same benefit from the security that Mercer does, and he surely cannot justly ask more.  The decree of the chancellor is based on this ground, and we think properly.

The doctrine of substitution which was urged at bar for the purpose of showing the relative rights of the parties, can have no influence whatever in the case.  Payment by an indorser or surety is a precedent condition to the right of substitution, and this has not been performed.  The doctrine on this subject was correctly laid down, but it will be time enough to adjudicate the question when a case is presented in which the facts will justify the application of the law.

The decree of the chancellor must be affirmed.